UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ANTHONY AIKENS,

            Plaintiff,
v.                                                                              **DECISION AND ORDER**
                                                                                 17-CV-1266S
TIMOTHY HUNTER and
JACOB MONKELBAAN,

            Defendants.
───────────────────────────────

## I. INTRODUCTION

In this action, pro se Plaintiff Anthony Aikens alleges, pursuant to 42 U.S.C. § 1983, that Defendants Timothy Hunter and Jacob Monkelbaan violated his First Amendment rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). In particular, he asserts that Defendants deprived him of his right to the free exercise of religion by denying him showers before Juma, or Muslim Friday congregate prayer, services. Before this Court is Defendants' Motion for Summary Judgment. (Docket No. 85.)  Despite being warned of the consequences of his failure to do so, Plaintiff has not responded to Defendants' motion. For the following reasons, this case is dismissed for failure to prosecute and Defendants are granted summary judgment.

## II. BACKGROUND

Because Plaintiff failed to respond to Defendants' motion, all facts set forth in Defendants' Rule 56 Statement are deemed admitted. See Fed. R. Civ. P. 56 (e)(2); Local Rule 56 (a)(2).

1

At all relevant times, Plaintiff was an inmate housed at the Attica Correctional Facility. (Defendants' Statement of Undisputed Facts, Docket No. 85-1, ¶ 1.) Defendants Hunter and Monkelbaan were employees of DOCCS. (Id., ¶ 2.)

Plaintiff alleges that at some point in September 2016, Defendant Monkelbaan posted a 2006 Grievance Decision regarding Juma showers on the inmate information board at Attica. (Id., ¶ 3.) At the bottom of this printout, in large letters, was handwritten "No Juma Showers Statewide." (Id., ¶ 4.) Monkelbaan denies that he posted the decision on the inmate message board. (Monkelbaan Declaration, Docket No. 85-4, ¶ 4.) Plaintiff alleges that the posting of this decision implemented a policy of denying Juma showers to inmates. (Docket No. 85-1, ¶ 3.) Defendants assert that the inmate message board is used to provide information to inmates, but not to officers or other facility staff. (Id., ¶ 7.)

Plaintiff alleges that, as a result of this policy, he was denied showers before Juma services on September 16, 23, and 30, and October 7 and 14. (Id., ¶ 4.) Plaintiff testified that on September 16, 2016, he did not ask Monkelbaan for a Juma shower. (Id., ¶ 20.) Plaintiff did not recall whom he requested a shower from on September 23, 2016. (Id., ¶ 21.) Plaintiff testified that he requested a Juma shower from Monkelbaan on September 30, and that Monkelbaan wrote his request on a list and did not verbally deny his request. (Docket No. 85-5 at p. 17.) Plaintiff did not receive a Juma shower on any of these dates. (Aikens Deposition, Docket No. 85-5 at pp. 11, 14, 18.)

On or about October 4, 2016, Plaintiff filed a grievance regarding the denial of showers on September 16, 23, and 30, 2016. (Docket No. 85-1, ¶ 8.)

2

On or about October 6, 2016, Deputy Superintendent of Security Bishop issued a memorandum regarding Juma showers. (Id., ¶ 9.) The memo stated that inmates were to be provided Juma showers when it was operationally feasible. (Id., ¶ 9.) The memo was to be read by the Chart Sergeant to all officers at roll call at the start of each work shift for 3 days. (Id., ¶ 10.)

Plaintiff testified that he requested a Juma shower from Monkelbaan on or about October 7, 2016. (Id., ¶ 23.) Monkelbaan marked the request on a list and did not verbally deny it. (Id.) Plaintiff did not receive a Juma shower that day. (Docket No. 85-5 at pp. 20-21.)

On October 9, 2016, Sergeant Hunter met with Plaintiff to investigate Plaintiff's grievance. (Docket No. 85-1, ¶ 13) Hunter did not know about Plaintiff's having been denied Juma showers before this meeting. (Id., ¶ 14.) As part of his investigation, Hunter met with nonparty Officer Brun, who informed him that Plaintiff had not requested showers on the dates specified in Plaintiff's grievance. (Id., ¶ 15). Hunter confirmed with Brun that inmates should receive a Juma shower when requested, if it was operationally feasible. (Id., ¶ 16.)

Plaintiff requested a Juma shower on October 14, 2016, but did not recall whom he requested it from. (Id., ¶ 24.) He testified that he did not have communication with Monkelbaan or Hunter on that date. (Id., ¶ 24.) Plaintiff did not receive a Juma shower that day. (Docket No. 85-5 at p. 82.)

3

The record indicates that Plaintiff attended Juma services on all 5 dates he claimed he was denied a shower. (Id., ¶ 25.) Plaintiff testified that a person who has not taken a shower is not prohibited from attending Juma services, if he "use[s] the bathroom." (Docket No. 85-5 at p. 8.)

Plaintiff initiated this action on December 4, 2017, asserting that Monkelbaan and Hunter denied him his First Amendment rights. (Docket No. 1.) He filed an amended complaint on December 27, 2017. (Docket No. 4.) After a period of discovery, Defendants filed their Motion for Summary Judgment on March 2, 2020. (Docket No. 85.) This Court set a deadline of April 13, 2020, for Plaintiff to respond to Defendants' motion. (Docket No. 86.) Plaintiff did not file a response.

On April 16, 2020, this Court *sua sponte* extended Plaintiff's deadline to respond to August 27, 2020, and warned him that his case could be dismissed if he failed to respond as directed. (Docket No. 87.) On June 21, 2020, Plaintiff wrote a letter to the Court, indicating that he had mailed his response, but that officials at the jail where he was housed had stolen his papers, and he was fearful of filing his last copy without assistance from this Court. (Docket No. 88.) In response, this Court extended Plaintiff's deadline to respond to September 14, 2020, and warned him of the consequences for not doing so. (Docket No. 89.) Plaintiff again failed to file a response as directed.

After Plaintiff failed to respond, this Court *sua sponte* extended Plaintiff's time to respond to October 14, 2020, and again warned Plaintiff that failure to respond could lead to dismissal of his action. (Docket No. 90.) Plaintiff again failed to respond.

4

On December 7, 2020, this Court issued another Order *sua sponte* extending Plaintiff's time to respond to Defendants' motion until February 1, 2021.  (Docket No. 91.) This Court again warned Plaintiff that his failure to respond could result in his case being dismissed for lack of prosecution and stated that this was Plaintiff's final warning.  Plaintiff failed to respond for a fifth time.[1]

### III. DISCUSSION

#### A.    Dismissal for Failure to Prosecute

Despite numerous opportunities to do so, Plaintiff has not responded to Defendants' motion, nor has he submitted evidentiary support for his claims.  This case therefore warrants dismissal for failure to prosecute, under Rule 41 (b) of the Federal Rules of Civil Procedure, which provides that

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41 (b).

Where the defendant has not moved under Rule 41 (b), a court may nonetheless dismiss a case *sua sponte*.  Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1982); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982). In Link, the Supreme Court noted that "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,'

---

[1] The docket reflects that each of this Court's orders was mailed to Plaintiff and that none was returned to the court as undeliverable.

governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link, 370 U.S. at 630-31.

Rule 41 (b) does not define what constitutes failure to prosecute. But the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." Lyell Theatre Corp., 682 F.2d at 42. Dismissal pursuant to Rule 41 (b) falls within the court's discretion. See id. at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." Harding v. Fed. Rsrv. Bank, 707 F.2d 46, 50 (2d Cir. 1983) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam)); see also Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir. 1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should be granted only "when the circumstances are sufficiently extreme." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Nita v. Conn. Dep't of Env't. Prot., 16 F.3d 482, 487 (2d Cir. 1994)).

The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures; (2) whether the plaintiff received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar

congestion and protecting the litigants' due process rights; and (5) whether lesser sanctions would be appropriate.  See United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004); Nita, 16 F.3d at 485; Feurtado v. City of New York, 225 F.R.D. 474, 477 (S.D.N.Y. 2004) (quoting Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)). While a district court is not required to expressly discuss these factors on the record, "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning."  Lucas, 84 F.3d at 535. Finally, in examining the above factors, no single factor is to be considered dispositive.  See United States ex rel. Drake, 375 F.3d at 254.

In the present case, these factors weigh in favor of dismissal. Specifically, (1) Plaintiff has caused a delay of significant duration in this litigation, as the proceedings have been halted for almost 11 months as a result of his inaction, see Ruzsa v. Rubenstein & Sendy Attys at Law, 520 F.3d 176, 177 (2d Cir. 2008) (upholding dismissal where pro se party caused seven-month delay); (2) this Court directed Plaintiff five times to respond to Defendants' motion and warned each time that his failure to respond could result in dismissal of this case; (3) Defendants are inherently prejudiced by further delay of this action; (4) by affording Plaintiff ample time to prosecute his claims, this Court carefully balanced the need to alleviate court calendar congestion against Plaintiff's right to pursue his claims; and (5) no lesser sanction would be appropriate as Plaintiff's repeated failure to comply with this Court's multiple warnings of the possibility of dismissal demonstrate that lesser sanctions would be ineffective, see Ruzsa, 520 F.3d at 178 (holding that "it is . . . unclear that a 'lesser sanction' would have proved effective" in light of plaintiff's failure to respond to district court's notice). From these facts, this Court finds

that Plaintiff had ample opportunity to pursue his claims, but elected not to do so. Dismissal for failure to prosecute is therefore warranted.

In situations such as this, however, resolutions on summary judgment (with defendant's Rule 56.1 statements deemed admitted by Plaintiff) are generally to be preferred to dismissals under Rule 41(b). LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210–11 (2d Cir. 2001). Therefore, this Court will resolve Defendants' motion on the merits as well.

**B.     Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the

events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

By rule, judgment may also be entered against a party that fails to respond to a properly filed motion for summary judgment, if appropriate. Fed. R. Civ. P. 56 (e)(3). This district's Local Rules provide for similar relief: a nonmoving party's failure to file and serve an answering memorandum or affidavit may constitute grounds for resolving the motion against it. See Local Rule 7 (a)(2)(A) and (a)(3).

But failure to oppose or respond to a motion for summary judgment standing alone does not warrant granting the motion: "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." See Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244, 246 (2d Cir. 2004) ("failure to respond to [a Rule 56] motion does not alone discharge the burdens imposed on a moving party"); Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the moving party fails to submit evidence sufficient to meet its burden, "summary judgment must be denied even if no

9

opposing evidentiary matter is presented." Amaker, 274 F.3d at 681.  Consequently, the Second Circuit has emphasized that district courts "'in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" Vt. Teddy Bear, 373 F.3d at 246 (quoting Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)).

**C.     42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's claims are grounded in the First Amendment.

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz,

No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

Defendants argue that Sergeant Hunter cannot be held personally liable for any injury Plaintiff may have suffered, because he never actively denied Plaintiff a shower, and never failed to enforce the DOCCS policy. This Court agrees.

11

As to denying showers, Plaintiff nowhere claims that he ever requested a Juma shower of Hunter or that Hunter ever denied him. (Docket No. 85-1, ¶¶ 20-24.) Plaintiff also claims that Hunter failed to read the memo instructing officers to permit Juma showers where feasible, and thereby failed to enforce a policy allowing Juma showers. But Defendants assert that it is "Chart Sergeants" who are responsible for reading the memo at roll call, and that Hunter, as "Block Sergeant," was never responsible for this duty. (Id., ¶¶ 10-11.) Given these facts, which this Court deems admitted, a reasonable jury could not find that Hunter was involved in denying Plaintiff showers, in enforcing a policy of denying inmates showers, or in failing to enforce a policy allowing inmates showers.

During his deposition, Plaintiff was asked, "how do you know personally Sergeant Hunter did not direct the officers to adhere to the policy" of allowing inmates Juma showers where feasible. (Docket No. 85-5 at p. 33.) Plaintiff stated, "I can only go by because I was denied and nobody else was denied." (Id.) A reasonable jury could not find this sufficient to establish that Hunter was personally involved in the denial of a shower to Plaintiff, or in a failure to enforce any shower policy.  Hunter will therefore be dismissed for lack of personal involvement.

**D.     Denial of Juma Showers**

Plaintiff also brings a claim against Officer Monkelbaan for denying him the free exercise of his religion by denying him Juma showers on two occasions, and by posting the 2006 grievance decision, which instituted a policy of denying him showers.

**1.     Free Exercise of Religion Standard**

12

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003). A claim under the Free Exercise Clause, made actionable against state officials through 42 U.S.C. § 1983, requires that "a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." Barnes v. Furman, 629 F. App'x. 52, 55 (2d Cir. 2015). After defendants present a legitimate penological interest, "the burden remains with the prisoner to show that these penological concerns were irrational." Ford, 352 F.3d at 595.

In determining whether a belief is sincerely held," it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of these creeds." DeJesus v. Bradt, 174 F. Supp. 3d 777, 784 (W.D.N.Y. 2016) (citing McEachin v. McGuinnis, 357 F.3d 197, 201 (2d Cir. 2004) (quotation omitted)). Rather, a court should consider whether the plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." Id.

"The Second Circuit defines a substantial burden as a situation where 'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hamilton v. Countant, No. 13-CV-669(RA), 2016 WL 881126, at *4 (quoting McEachin, 357 F.3d at 202-03, n.4). Although demonstrating a substantial burden is "not a particularly onerous task," McEachin, 357 F.3d at 202, the requirement is not met "by a *de minimis* imposition on the free exercise of religion." Leach v. New York City, No. 12

13

CIV. 3809 PAC JCF, 2013 WL 3984996, at *5 (S.D.N.Y. Aug. 2, 2013) (quoting McEachin, 357 F.3d at 203, n. 6).

It is well-settled in this Circuit that missing two weekly religious services does not substantially burden a prisoner's right to freely exercise his religion. See, e.g., Smith v. Goord, 541 F. App'x. 133, 134 (2d Cir. 2013) (affirming jury verdict for defendants where prison failed to hold any Islamic services during plaintiff's stay, which included four Fridays); Hanton v. Mathiau, 29 Fed. Appx. 772, 773 (2d Cir. 2000) (affirming district court's grant of summary judgment to defendants where prison officials prevented plaintiff from attending weekly services once in August 1997 and "for a three-week period in October 1997"); Blalock v. Jacobsen, No. 13–CV–8332 (JMF), 2014 WL 5324326, at *7 (S.D.N.Y. Oct. 20, 2014) (dismissing plaintiff's free exercise claim pursuant to Fed. R. Civ. P. 12(b)(6) because "the denial of two religious services ... does not substantially burden an inmate's right to religious observation"); Shapiro v. Cmty. First Servs., Inc., No. 11–CV–4061 (KAM)(LB), 2014 WL 1276479, at *11 (E.D.N.Y. Mar. 27, 2014) ("not permitting a prisoner to attend two religious services 'is a *de minimis,* or insubstantial, burden on an inmate's ability to freely exercise his religion'"); Williams v. Weaver, No. 9:03-CV-0912 (LEK/GHL), 2—6 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (collecting earlier cases and holding, on a Rule 12(c) motion, that depriving a prisoner of the right to attend Friday services and religious classes for two weeks did not, "as a matter of law," substantially burden his right to practice his religion).

The denial of a small number of meals has also been held to be a *de minimis* burden. See, e.g., Washington v. Affy, 968 F. Supp. 2d 532, 537-38 (W.D.N.Y. 2013)

14

(denial of two breakfasts and one evening meal during Ramadan was not a substantial burden); Jean-Laurent v. Los, 12-CV-132 (SF), 2015 WL 1015383, at *6 (W.D.N.Y. Mar. 9, 2015) (denial of two meals); Odom v. Dixion, 04-cv-889F, 2008 WL 466255, at *10-12 (W.D.N.Y. Feb. 15, 2008) (denial of meals on seven occasions over several days); Thomas v. Picio, 04-cv-3174, 2008 WL 820740, at *6 n.8 (S.D.N.Y. Mar. 26, 2008) (denial of three or four meals).

There is little precedent regarding denials of Juma showers. In DeJesus v. Bradt, the court denied summary judgment where the plaintiff was denied Juma showers on ten occasions during Ramadan, and where an approved event plan called for daily showers. 174 F. Supp. 3d at 788 ("the Court will not make a determination that, as a matter of law, Plaintiff was not substantially burdened by the deprivation of approximately ten showers before prayer services during the month of Ramadan in 2012, particularly in light of the fact that Defendants have not opposed Plaintiff's assertions in this respect.").

"In determining whether the burden imposed by the defendants is reasonable or irrational, a court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate governmental objective; (2) whether the prisoner has an alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating the plaintiff's exercise of the right that have only a *de minimis* adverse effect on valid penological interests." Id. at 788–89 (citing Lewis, 920 F. Supp. 2d at 384) (quotation omitted)).

**2. The denial of at most three Juma showers represents a *de minimis* injury.**

Defendants do not dispute that Plaintiff's Juma shower requirements were part of a sincerely held religious belief. They argue, rather, that (a) Plaintiff suffered no injury because the record reveals he was able to attend Juma services on all the dates he alleges he was denied showers; (b) Plaintiff suffered at most *de minimis* injuries because he was denied at most two showers; and (c) the policy giving block officers discretion to offer Juma showers is rationally related to a legitimate penological interest.

As to Defendants' first argument, this Court finds it misplaced, because Plaintiff is asserting that the shower, the ritual cleansing before Juma prayer, in and of itself, was a meaningful religious practice. It is not necessarily the case that being able to attend Juma services would remedy the burden on an inmate from not being able to ritually cleanse as he sincerely believed was necessary, and this Court declines to grant summary judgment on this basis.

However, Defendants' second argument is convincing. From the facts before it, no reasonable jury could find that the denial of two Juma showers imposed more than a *de minimis* burden on Plaintiff's free exercise of his religion. Because Monkelbaan denies posting the Decision, and this Court deems this as admitted, Monkelbaan cannot be held liable for any denials stemming from the posting of the Decision. Monkelbaan does not expressly assert in his declaration that he did not deny Plaintiff Juma showers on the two dates that Plaintiff recalled requesting them from him. But even assuming, arguendo, that Monkelbaan was responsible for two shower denials, this would not rise beyond a *de minimis* burden on Plaintiff's exercise of his religion.

Because summary judgment is warranted on this basis, this Court will not address Defendants' argument that the policy of allowing showers only at officer discretion is rationally related to a legitimate penological interest, nor its argument that access to a sink is the equivalent of a Juma shower.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's case is dismissed for failure to prosecute, and Defendants' Motion for Summary Judgment is granted.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiff's case is DISMISSED for failure to prosecute, pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 85) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      March 9, 2021
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M.  SKRETNY
                                        United States District Judge